Sayre, J.
April 1, 1913, Daniel Egbert, Sr., at that time temporarily residing in Columbus, Ohio, executed a paper writing purporting to be his last will and testament. July 28, 1913, the instrument was, according to the statute, deposited in the probate court of Scioto county, Ohio. September 4, 1917, Daniel Egbert, Sr., died. A few days after his death, perhaps the fourth, search was made for such paper writing, and the same could not and never has 'been found. Upon application the probate court of Scioto county established the contents and admitted to probate and record the will of Daniel Egbert, Sr., on the theory that he had made and executed a last will and testament which had ■been lost or destroyed.
January 14, 1918, an action was commenced by Henry Egbert, one of his heirs, in the court of-common pleas, in which it was averred that the contents of the alleged last will, established and admitted to probate, were not those of the last will of Daniel Egbert, Sr., deceased, and that he died leaving no will.
In the action to contest the proponents of the will offered the copy of the last will and' testament as certified by the probate court, the order of probate, and rested.
The plaintiff then offered evidence showing that the will was never seen by any one connected with the office of the probate judge after it was de *434 posited there in 1913, and the deposition of Fred Geischel, who testified that he had no recollection of ever having signed the purported will of Daniel Egbert, Sr., or having been present at the time it i’s claimed the same was signed by Daniel Egbert, Sr.
Fiar ford A. Toland, a witness for the proponents, testified that he. drew the alleged will, saw it executed by the testator, that he signed as a witness, and that he saw Fred Geischel also sign the same as a witness, that, the testator signed in the presence of the witness and Geischel, and that the testator acknowledged the signed instrument as his will in the presence of both witnesses. Mrs. Louise Johnson, a daughter of the testator, at whose home the will was drawn, testified that Geischel was called and came into her house to be a witness to the will, and that her father’s mind at the date of the execution of the will “was just as clear as a bell.”
Evidence was also introduced of declarations of the testator as to the contents of the will, and Toland produced his office copy of the will, which is the form of the will probated and recorded.
Further evidence was admitted that testator was never at the court-house in Portsmouth after the will was deposited there in 1913, and that the testator declared on more than one occasion that his will was at that place Other declarations of the. testator were admitted to the effect that his intention in the distribution of his property corresponded to the disposition of the same as appears in the paper writing admitted to probate and recorded as his last will and testament.
*435 The verdict in the court of common pleas was in favor of the contestees.
We are convinced from the record that the evidence adduced on the trial in the court of common pleas, to establish the lost or destroyed paper writing signed by Daniel Egbert, Sr., as his last will and testament, was of the character required by Cole v. McClure et al., 88 Ohio St., 1. The evidence of its execution and contents was “clear, strong, positive, free from bias, and convincing beyond a reasonable doubt.” While the witness, Geischel, does not remember the transaction, Mrs. Louise Johnson testified he was present at the time of the execution of the will, and the testimony of Mr. Toland is convincing that the will was signed at the end thereof by the testator, and that it was attested and subscribed in his presence by Toland and Geischel, and that they saw the testator subscribe and heard him acknowledge the same as his last will and testament.
While there must 'be at least two witnesses to a will, the contents of a lost or spoliated will may be proved by the testimony of a single witness. 40 Cyc., 1299.
It is contended that the court omitted to state two vital issues in the charge to the jury: one, that before the will could be sustained the jury must find the contents of the copy offered for probate to be practically identical with the original; and the other, that the testator acknowledged the will to be his last will. But as the court’s attention was not called to the omission, or a request made to give such charge, we can not reverse the case *436 for such omission. The State of Ohio v. McCoy, 88 Ohio St., 447.
The plaintiff in error claims that the judgment must be reversed on the authority of Cole v. McClure, 88 Ohio St., 1, because -there is no proof that the will was in existence subsequent to the death of the decedent. But it will be observed in the last-named case that there was evidence that the will admitted to probate and record was destroyed by decedent before he became insane. In our case it is undisputed that the will of Daniel Egbert, Sr., was deposited in the office of the probate court four years before his death, that it was never returned to him, or to any one for him; that he referred to his will as being on deposit in the court-house at Portsmouth, and that a few days subsequent to his death it could not be found; but there is no evidence as to when it was lost, spoliated or destroyed, whether before or after the death of the testator.
In suits to contest lost or spoliated wills the law of procedure is the same as in the contest of other wills. (Section 10548, General Code.) “On the trial of such issue, the order of probate shall be prima facie evidence of the due attestation, execution, and validity of the will or codicil.” Section 12083, General Code, and Behrens v. Behrens, 47 Ohio St., 323.
Whether or not the will was properly admitted to probate and record can not be inquired into in a suit to contest a will. Converse et al. v. Starr, Admr., et al., 23 Ohio St., 491, and Stacey et al. v. Cunningham, Exr., 69 Ohio St., 176.
In view of these propositions, there being no evidence in -the ca-se outside the order of probate cis to *437 when the will was lost, spoliated or destroyed, such order of probate is sufficient evidence of the validity of the will, hence of its existence subsequent to the death of Daniel Egbert, Sr. Where there is no other evidence such order of probate is equivalent to evidence that is “certain, satisfactory and conclusive” that the will was in existence subsequent to the death of the decedent.
The court charged the jury as follows:
“It is the usual presumption that a will which had remained in the testator’s custody, or to which he had access after its execution, and -which can not be found after his decease, has been destroyed by the testator himself, with the intention of revoking it; but this presumption is entirely overcome and rebutted when it appears that such will was deposited by the testator, or by some one for him, according to law, with the probate judge, and that the testator did not thereafter have it in his possession or have access to it.”
This instruction is not erroneous. The presumption referred to arises from the fact that ordinarily and usually when wills known to have been in the custody of testators can not be found after their -decease, they were destroyed by such decedents with the intention of revoking the same. Destruction of wills in the possession of decedents animo revocandi usually attends the fact that the -same •can not be found after their decease. But when a will is deposited with a public officer, in accordance with a statute of the state, and is never seen after-wards by testator, or any one acting for him, no presumption could arise that he destroyed it.
*438 The judgment of the court of common pleas will be affirmed.
Judgment affirmed.
Middleton andWalters, JJ., concur.